New Orleans & N. E. R. Co. *et al. v.* Interstate Wholesale Grocers, Inc.

[95 South. 316. No. 22873.]

1. Carriers. *Carrier held liable for damages in loss settled by agent.*
   In a shipment of freight f. o. b. point of destination with the right given the consignee to inspect before acceptance, where this inspection is made by the consignee and the agent of the railroad company, and the shipment declined, whereupon the agent entered into an oral agreement with the consignee that, if he would take the shipment and dispose of it to the best advantage, the railroad company would pay him for any damage sustained by him, and where the testimony shows that this agent of the railroad company was in the habit of settling claims for lost and damaged freight, then, under this agreement, the railroad company is liable for these damages.

2. Carriers. *Settlement of claim for lost or damaged freight made by agent of railroad exceeding authority where such fact unknown to one with whom agreement made held binding.*
   Where the freight agent of a railroad company is in the habit of settling claims for lost and damaged freight, but where there is a secret limitation .that his authority only extends to settling claims for an amount not exceeding one hundred dollars, which fact is unknown to one with whom the agreement was made, then the agent had the apparent authority to make an agreement to settle the claim for lost and damaged freight, which agreement is binding upon the railroad company.

Appeal from circuit court of Jones county.

Hon. R. S. Hall, Judge.

Action by the Interstate Wholesale Grocers, Inc., against the New Orleans & Northeastern Railroad Company and John C. Davis, as Agent, etc. From a judgment for plaintiff, defendants appeal. Affirmed.

*Bozeman & Cameron,* for appellant.

As to the corporation, therefore, we submit that there is no possible liability. The contract of carriage was made by the proper agency of the government. It was an entire contract and in it the government bound itself to transport the car involved to Laurel, Mississippi. While the government was about the performance of its engagement, it turned back to private hands the lines of the various carriers, including the line of the defendant corporation. The defendant, railroad company undertook along with other carriers, as its agent, to complete the contract it, the government, had undertaken. Anything the defendant corporation did was towards the fulfillment of the government's contract and as agent of the government. It made no contract. It undertook the performance of no contract on its own responsibility. It breached no contract, and it has no liability in the matter. *Railroad Company* v. *Ault,* 246 U. S. 554, 65 L. Ed. 1057; *Telephone Co.* v. *Poston,* 256 U. S. 662, 65 L. Ed. 1157; *Kirchman* v. *U. S.* (C. C. A.), 263 Fed. 538; *Nealy* v. *Payne,* 126 Miss. 812, 89 So. 669; *Currie* v. *Railroad Co.,* 90 So. 313, 19 A. L. R. 6915. See also the complete note appended to the *Currie case,* 19 A. L. R. 695, and also see notes to which this note refers.

With reference to the alleged promise of the agent, McGehee, it is true that he was agent of the defendant corporation at the time of the alleged promise. But the matter about which the promise is alleged to have been made is one in which its principal is not interested. The liability alleged to have been assumed was not a liability of the defendant corporation, but was one which belonged, if to anybody, to the government.

As to the defendant, director general and agent. It is contended, however, that, aside from the liability of the defendant, director general and agent in the first instance, he is liable by reason of the promise which is alleged to have been made by the local freight agent of the New Orleans & Northeastern railroad at Laurel, Mississippi. The charge is made that regardless of the liability *vel non* of the defendant director general and agent, to answer to the plaintiff for the breach of a legal duty in connection with the shipment, he is bound to respond in damages to the plaintiff, because the local freight agent of the delivering line is said to have assumed liability for him.

It will be noted further that the alleged promise was made by the agent at Laurel, before the shortage of thirty-four sacks, which forms the chief item of damage, was discovered. At the time of the inspection of the shipment and the alleged assumption of liability, the only damage then in the contemplation of the parties was that arising out of the spoiled condition of a part of the shipment. This condition resulted in the culling of nine sacks. The shortage of thirty-four sacks was not then noted, however, and was not discovered until sometime later. It is not contended that any further promise was made than that alleged to have been made at the first inspection of the car. It is obvious then that the alleged promise can form no possible basis for a claim on account of the thirty-four sacks which did not arrive with the rest of the shipment.

Then, too, the alleged promise, could not, we submit, have the sanction of the law. Here it is claimed that a local freight agent promises to pay a claim not yet filed, the amount of which is undetermined, and agrees to pay it without investigation as to where the responsibility for the condition of the car lay. As this court knows, the delivering carrier can accept responsibility only for its own line. The claim must be submitted to the various intermediate carriers and the initial carrier before it can be determined whether it will be recognized or not.

And finally, the alleged promise is condemned, because the freight agent to whom it is attributed had no authority to make it. The undisputed evidence is that the freight agent at Laurel had no authority whatever to settle or promise to pay claims arising out of federal control. It will be remembered that this shipment started on its journey some twenty days before the termination of federal control, but the alleged promise was made some sixteen days after the roads had been turned back to private hands. The freight agent, with respect to corporation claims, did have authority up to a one hundred dollar maximum, to compromise claims arising from a damaged condition of goods; but even this did not extend to goods which were short, or missing.

The plaintiff attempted to get around this lack of authority by introducing testimony that similar adjustments had been made in the past. Upon cross-examination, however, it developed that claims paid by the agent were claims for damaged goods and not claims for goods which did not arrive. The reason for this limitation of the agent's authority is obvious and just. A freight agent at destination could not possibly, intelligently adjust a claim for shortage. He has no possible way of knowing how many articles were delivered to the carrier at the point of origin. In this day, when most shipments are made "shipper's load and count," it might easily develop that the number of the articles set forth in the bill of lading was incorrect or that the shipment had been separated into different cars en route.

At any rate, it is undisputed in this case that the agent had no authority whatever with respect to corporate claims if they involved shortages, and that he had no authority whatever to settle or agree to pay a government claim.

*Shannon & Schauber,* for appellee.

Counsel further contend in their brief that the defendant railroad company is not liable for the reason that the shipment of potatoes began on February 10, 1920, when

W. D. Hines, Director General, the agent of the government, was in the possession of the initial carrier, and they contend that the shipment continued to be a government shipment notwithstanding that the defendant, New Orleans & Northeastern Railroad Company, had been returned to its owners sixteen days before the shipment was delivered at Laurel. All the testimony in the record, without conflict, shows that the defendant railroad company received the shipment at Meridian, Mississippi, but whether it received it on March 1st, or March 15th, the record is silent, but it is shown, without conflict, that the defendant New Orleans & Northeastern Railroad Company was the last carrier and that when the potatoes were tendered to appellee they were tendered by the agent of the said defendant railroad company, who collected the freight and war tax for the same. The law, as we understand it, is set out in the case of *Davis, Director General,* v. *Dantzler Lumber Company,* reported in 126 Mississippi Reports, on page 812.

This brings us to an examination of what is the law in reference to principal and agent. We find the rule clearly stated in the first volume of Elliott on Contracts, section 453, on page 669, as follows ". . . However, an agent's powers are not to be determined by the authority intended to be conferred upon the agent, but what authority a third person dealing with him is justified, from the acts of the principal and circumstances of the case, in believing were given him. A principal is bound by the apparent, and not merely the actual or express, authority given his agent, where third persons have in good faith relied thereon in ignorance of any limitations or restrictions thereto, whether the agency is a general or special one."

This court has also declared that there is no other or different rule (as to principal and agent) to be applied to corporation or individual principal. *Life Ins. Co.* v. *Bouldin,* 100 Miss. 678. The record shows that on several occasions this same agent, representing the same defendant railroad company had entered into similar agreements

131 Miss.—11

with appellee, and these agreements were all carried out, with this exception. Appellee having had such agreements with the defendant railroad company formerly, it had a perfect right to believe that the agent of the defendant railroad company was acting within the scope of his authority in this case.

We call the court's attention to the recent case of *Thomas McFarland Lumber Company* v. *Selby, et al.*, decided by this court on October 16th, last, and reported in 93 So. 434.

Sykes, J., delivered the opinion of the court.

The Interstate Wholesale Grocers, Inc., the appellee, as plaintiff in the circuit court, sued and recovered a judgment against both appellants (defendants in the lower court) for a shortage and damage to a car of Irish potatoes, from which judgment appellants prosecute this appeal.

The appellee purchased somewhere in Maine this car of potatoes, f. o. b. Laurel, Miss. At the time the car was shipped the railroads were being operated by the defendant Davis, as Agent for the United States Government; before they reached their point of destination, however, the railroads were turned over to their proper owners. The car was delayed in transit a long time. The record does not show how long it was in the possession of the New Orleans & Northeastern Railroad Company before reaching Laurel. Under its contract plaintiff had the right to inspect the car before accepting it. This inspection was made by the plaintiff in the presence of the agent of the New Orleans & Northeastern Railroad Company. It was noticed by both of them that a great many of the potatoes were rotten and worthless. The plaintiff thereupon rejected the shipment, whereupon the declaration alleges, and proof for the plaintiff shows, that the agent of this railroad company and the plaintiff entered into an agreement, the effect of which was that the plaintiff would take the potatoes and dispose of them to the best of his ability,

the railroad company to pay him whatever damage he sustained because of the condition of the potatoes. When this agreement was entered into neither the plaintiff nor the agent of the defendant railroad company knew that the car was short about thirty-four sacks of potatoes. This shortage was later discovered by the plaintiff, and the agent was promptly notified of it. Upon the freight bill there was also made a notation to the effect that the car was thirty-four sacks short and about forty-six sacks, more or less, decayed, with this further notation: "Consignee to handle to best advantage." The manager of the plaintiff testified that he declined to accept the shipment, but upon the request of the agent of the railroad company he paid the draft and the freight on condition that the railroad would pay for the damaged potatoes in the car. In another place, on cross-examination, he stated that he took the car on the condition that they would pay for the loss or damage, and that the agreement was with this agent that he would be protected from any loss. The declaration is founded upon this agreement, which is sustained by the proof of plaintiff. The testimony further shows that this agent frequently settled freight claims for lost and damaged freight.

The testimony for the defendant was to the effect that the agent was limited in making settlement for all damaged freight to a sum not exceeding one hundred dollars, and that he had no authority to settle for lost freight or for a shortage in a shipment. While it may be true that as between himself and the company there was a secret limitation upon the authority of the agent to settle, yet, by virtue of his position, and the authority he exercised thereunder, he had the apparent authority to settle claims for both lost and damaged freight, with no limitation upon the amount, and this secret limitation is not binding upon the plaintiff.

At the time this agreement was made the railroad was being operated by the New Orleans & Northeastern Railroad Company, and not by Davis, Agent. We therefore

conclude that the judgment is correct as to this railroad company, but erroneous as to Davis, Agent.

Affirmed as to the railroad company, and dismissed as to Davis, Agent. ·

*Affirmed.*